

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-19-00011-CR

———————————————————

TROY E. DOVE, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from County Criminal Court No. 1
Tarrant County, Texas
Trial Court No. 1559206

---

Before Sudderth, C.J.; Birdwell and Womack, JJ.
Memorandum Opinion by Justice Birdwell

# MEMORANDUM OPINION

Appellant Troy E. Dove was convicted of driving while intoxicated. In his first two issues, Dove contends that the trial court abused its discretion by allowing two nonexperts to testify that he showed signs of narcotic intoxication. He argues that the subject of narcotic intoxication falls within the exclusive domain of an expert toxicologist and that lay opinion on the topic is forbidden. But even assuming the trial court erred by allowing this testimony, any error is harmless. The State concedes Dove's third and fourth issues, which call for only minor modifications to the judgment. Therefore, we affirm as modified.

## I.

On the afternoon of August 12, 2018, Officer Cleburne Eardley was dispatched to address a report of a possibly intoxicated driver at a gas station. He found Dove slumped over at the wheel of an idling gas tanker truck and what appeared to be a trail of vomit leading from the ground up to the truck's cab. When Officer Eardley spoke, Dove jolted awake. Officer Eardley had to catch Dove as he unsteadily climbed down from the cab, and his speech was slurred and mumbled. Officer Eardley did not smell any alcohol, but he still suspected that Dove was intoxicated. Seeing how unsteady Dove was, Officer Eardley believed it would be unsafe to conduct field sobriety testing. When paramedics were through treating Dove, Officer Eardley arrested him. As they drove to the jail, Dove repeatedly told Officer Eardley that had taken prescription

2

hydrocodone; Dove asked if the charges would be dropped in light of the fact that he had a prescription.

At the jail, Dove refused consent for a blood draw, and Officer Eardley obtained a blood warrant. Dove's blood alcohol level was .127. He was charged with misdemeanor driving while intoxicated with an enhancement for a prior assault offense.

At trial, the State sought to elicit Officer Eardley's testimony concerning the signs that Dove was intoxicated by narcotics, including his slow movements, constricted pupils, and apparent dry mouth. Dove objected that Officer Eardley was not qualified as an expert in toxicology and should therefore not be allowed to opine on narcotic intoxication. The trial court overruled the objection and allowed this testimony.

Later, the State called Grayson Sterrett, one of the paramedics who examined Dove at the scene. When the State asked Sterrett what symptoms would suggest intoxication by heroin or hydrocodone, Dove again objected that Sterrett had not been qualified as an expert. The trial court overruled the objection and allowed Sterrett to testify that Dove showed symptoms of narcotic intoxication.

Despite Dove's admitted use of hydrocodone and the testimony concerning symptoms of opioid use, the jury was not charged on intoxication by a controlled substance. Instead, the jury was charged only on intoxication by alcohol. The jury found Dove guilty as charged. After finding his enhancement true, the trial court sentenced Dove to 90 days in jail. Dove appeals.

## II.

In his first two issues, Dove contends that the trial court abused its discretion by allowing two nonexperts to testify concerning narcotic intoxication. Relying on *Smithhart v. State*, 503 S.W.2d 283, 285 (Tex. Crim. App. 1973), Dove argues that the topic of narcotic intoxication is solely the province of an expert on toxicology and that lay opinion on the matter is impermissible.

The State argues that even assuming there was error in allowing lay testimony on this subject, it would be a harmless error. We agree with the State.

Because any error is not constitutional, we apply rule 44.2(b). Tex. R. App. P. 44.2(b). That rule requires us to disregard any nonconstitutional error that does not affect appellant's substantial rights. *Id.* An error that has a "substantial and injurious effect or influence in determining the jury's verdict" affects a substantial right. *Haley v. State*, 173 S.W.3d 510, 518 (Tex. Crim. App. 2005); *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)). Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

In determining whether an error affected an appellant's substantial rights, we review the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the

4

character of the alleged error and how it might be considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We may also consider the jury instructions, the State's theory and any defensive theories, whether the State emphasized the error, closing arguments, and even voir dire, if applicable. *Haley*, 173 S.W.3d at 518–19; *Motilla*, 78 S.W.3d at 355–56.

A person commits DWI when the person is "intoxicated while operating a motor vehicle in a public place." Tex. Penal Code Ann. § 49.04(a). The Texas Penal Code sets out two definitions of "intoxicated." *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012). The subjective definition of intoxicated is "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, or a combination of two or more of these substances, or any other substance into the body." *Id.* (quoting Tex. Penal Code Ann. § 49.01(2)(A)). The per se definition of intoxicated is "having an alcohol concentration of 0.08 or more." *Id.* (quoting Tex. Penal Code Ann. § 49.01(2)(B)).

However, the charge did not instruct the jury on the full definitions of intoxication; omitted from the charge on the subjective definition of intoxication was any mention of intoxication by a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body. Instead, the jury was instructed that it could find the defendant guilty only if it found beyond a reasonable doubt that Dove was intoxicated by alcohol, either in that alcohol impaired the normal use of his faculties or in that his blood alcohol concentration was

0.08 or more. The jury is presumed to have understood and followed the court's charge, absent evidence to the contrary. *Id.* at 467. Thus, in *Crenshaw*, the court presumed that the jury convicted the defendant based only on the subjective theory of intoxication that was charged and not on the uncharged per se theory of intoxication. *Id.* Likewise, we presume that the jury convicted Dove based only on the alcohol intoxication that was charged and placed no reliance on the drug intoxication that was uncharged.

In a certain sense, the charge thus did away with the sole area where harm might reside. A purely obedient jury would not have considered the drug evidence at all in reaching its conclusion that Dove was intoxicated by reason of alcohol alone. Lacking any evidence to the contrary, we are required to presume that the jury was obedient to the charge in this way. *See id.*

A similar conclusion was reached in *Sifford v. State*, 741 S.W.2d 440, 441 (Tex. Crim. App. 1987). There, the indictment wrongly alleged two offenses that were not properly subject to joinder, aggravated sexual assault and robbery, and the State introduced evidence of both. *Id.* at 440. Nonetheless, the State elected to proceed only on the aggravated sexual assault charge. *Id.* at 441. The *Sifford* court held that the election cured any harm from the misjoinder or from the introduction of evidence concerning a robbery offense that was never submitted for the jury's consideration. *Id.* In the same way, here, the State's election to proceed solely on alcohol intoxication would seem to mitigate any harm flowing from evidence relating to a drug-intoxication

6

theory that was never submitted to the jury. Thus, the nature of the charge strongly implies that any error was harmless.

The overwhelming evidence of alcohol intoxication also suggests harmless error. The prosecution introduced testimony and body-camera video demonstrating that Dove exhibited many of the telltale signs of alcohol intoxication: being found unconscious near a pool of his own vomit, only to wake, lurch down from the truck, and slur incoherent responses to Officer Eardley's questions. Analysis showed that Dove's blood alcohol level was .127, more than enough for per se alcohol intoxication. A lab supervisor for the Texas Department of Public Safety testified that because of the high blood alcohol concentration, the lab decided not to even test the blood's drug content, concluding that the State had no need for this alternate form of intoxication evidence. In the same way, the force of this blood and video evidence might have further convinced the jury to put any drug intoxication out of its collective mind and focus only on alcohol intoxication. *See McRae v. State*, 152 S.W.3d 739, 745 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (op. on reh'g) (holding improper intoxication evidence harmless in light of "more persuasive" blood and video evidence, among other things).

Also of note is that the complained-of evidence was elicited from nonexperts, was cumulative, and was not emphasized by the State. *See Bagheri v. State*, 119 S.W.3d 755, 763 (Tex. Crim. App. 2003). The State never attempted to qualify the officer or the paramedic as experts in order to strengthen their testimony. Moreover, by the time

7

the State introduced this evidence, the jury had already seen a video in which Dove proclaimed ten times in the space of six minutes that he had taken prescription hydrocodone. Thus, it was Dove himself who gave the first and strongest evidence of drug intoxication; the officer's and paramedic's testimony on this front was duplicative and lesser. *See Harrington v. California*, 395 U.S. 250, 254, 89 S. Ct. 1726, 1728 (1969) (holding improper evidence harmless because it was, among other things, cumulative of the defendant's own inculpatory statements). And rather than distancing from this topic, Dove revisited the subject of opioid intoxication multiple times during the defense case and closing argument, further diluting the effect of the complained-of evidence. By contrast, the State never mentioned drug intoxication in voir dire or opening statement. During closing argument, the State even downplayed the legal significance of this evidence, saying "this case isn't all about drugs. . . . All we needed to prove intoxication was this score, a .127." Later, the State again ventured, "We don't need the drugs. This case was not about drugs." Thus, we are fairly assured that this nonexpert, cumulative, and deemphasized testimony could not have had more than a slight effect on the jury's decision. *See Bagheri*, 119 S.W.3d at 763; *Solomon*, 49 S.W.3d at 365.

In light of these factors—a charge that offered little opportunity for prejudice; a compelling record apart from the drug evidence; and the State's efforts to minimize this cumulative, nonexpert testimony—we hold that any error was harmless. *See Haley*, 173

8

S.W.3d at 518–19; *Motilla*, 78 S.W.3d at 355–56. We therefore overrule Dove's first and second issues.

## III.

In his third issue, Dove submits that the trial court assessed him with an unconstitutional "Emergency Management Services" fee. He notes that we held such a fee to be unconstitutional in *Casas v. State*, 524 S.W.3d 921, 927 (Tex. App.—Fort Worth 2017, no pet.). The State concedes error and asks this court to modify judgment and the bill of costs to strike this $100 fee. We will modify the judgment accordingly. *See Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993); *Gonzalez v. State*, No. 02-17-00373-CR, 2019 WL 983699, at *3 (Tex. App.—Fort Worth Feb. 28, 2019, no pet.) (mem. op., not designated for publication). Dove's third issue is sustained.

In his fourth issue, Dove contends that there was insufficient evidence to support his enhancement as a repeat offender. He observes that the judgment incorrectly recites that he pleaded true to the enhancement; in fact, he simply stood silent on the enhancement. Dove argues that the evidence is therefore insufficient to support the enhancement, because the State offered no evidence demonstrating a prior assault conviction. As a remedy, he asks us to simply reform the judgment without a remand for resentencing because he has already been released from jail, because the removal of the enhancement does not impact the upper limit of punishment, and because his ninety-day sentence remains within the applicable range of punishment after deleting the enhancement. *Compare* Tex. Penal Code Ann. § 12.22(2) *with id.*

9

§ 12.43(b)(2). The State again concedes error and asks us to accommodate Dove's request. We will modify the judgment accordingly. *See Bigley*, 865 S.W.2d at 27; *Gaddy v. State*, 433 S.W.3d 128, 131 (Tex. App.—Fort Worth 2014, pet. ref'd). Dove's fourth issue is sustained.

## IV.

We modify the judgment to delete the enhancement and to reflect that Dove did not plead true to any enhancement. We further modify the judgment and the bill of costs to delete the $100 emergency services fee, leaving total costs of $332.10. As modified, we affirm. *See* Tex. R. App. P. 43.2(b).

/s/ Wade Birdwell
Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: January 30, 2020